IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Cr. No. 2:22-cr-20262-JTF-tmp |
| **ARSENIO CLAYTON,** | ) ) ) | |
| Defendant. | ) ) | |

**SECOND ORDER ADOPTING THE CHIEF MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION, OVERRULING DEFENDANT'S OBJECTIONS,
AND
DENYING THE DEFENDANT'S MOTION TO SUPPRESS**

On October 27, 2023, the Defendant Arsenio Clayton filed a Motion to Suppress a Taurus 9mm caliber pistol that resulted in his arrest and indictment in this case. (ECF No. 22.) The motion was referred to the Chief United States Magistrate Judge for report and recommendation ("R & R") pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 24.) On March 15, 2024, the Chief Magistrate Judge issued a report, recommending that the Defendant's motion to suppress be denied. (ECF No. 33.) Neither party filed objections to the R & R. On May 14, 2024, the undersigned Court entered an Order Adopting the Chief Magistrate Judge's Report and Recommendation and Denying Defendant's Motion to Suppress. (ECF No. 35.)

On June 24, 2024, Defendant submitted a *pro se* letter to the Court requesting appointment of new counsel to represent him in this matter. (ECF No. 39). Not surprisingly, counsel for the Defendant filed a "Motion to Reconsider the Adoption of the Magistrate Judge's Report and

1

Recommendations and File Objections" on June 26, 2024. (ECF No. 40). Counsel for the Defendant asked for additional time to review the report with Defendant and file objections. After hearing from Counsel, as well as the Defendant, the Court granted *ore tenus* Defendant's motion for new counsel and denied the motion for reconsideration. (ECF No. 41 & ECF No. 43.) Defendant's new counsel filed objections to the R & R on August 8, 2024, to which the Government responded on August 16, 2024. (ECF Nos. 48, 49 & 50.) After review, the Court **Denies** Defendant's Objections, ECF No. 49, and **Adopts** the Chief Magistrate Judge's Report and Recommendation. (ECF No. 33.) Defendant's Motion to Suppress is hereby **DENIED**. (ECF No. 22.)

## STANDARD OF REVIEW

A United States District Court Judge may designate a United States Magistrate Judge to conduct evidentiary hearings and submit proposed findings of fact and conclusions of law for disposition by the District Judge of certain motions including motions to suppress evidence in criminal cases pursuant to 28 U.S.C. § 636(b)(1)(B); *U.S. v. Houston*, Case No. 3:13-10-DCR, 2013 WL 3975405 *1 (E.D. Tenn. July 29, 2013). The District Judge may accept, reject or modify, in whole or in part, the Magistrate Judge's proposed findings and recommendations. *U.S. v. Raddatz*, 447 U.S. 667, 673-675 (1980), *reh'g den.*, 448 U.S. 916 (1980). *See* 28 U.S.C. § 636(b)(1)(B). In criminal cases, the District Judge is required to make a *de novo* determination of those portions of a Magistrate's report and recommendation to which specific objections are made regarding the dispositive matters contained the report and recommendation. *Id.* at 674-675. While most actions by a Magistrate Judge are reviewed for clear error, proposed recommendations on motions to suppress evidence in criminal matters are subject to *de novo* review. *United States v. Quinney,* 238 F. App'x 150, 152 (6th Cir. 2007); *United States v. Curtis*, 237 F.3d 598, 603 (6th

Cir. 2001) (holding that a magistrate judge's ruling on dispositive motions such as those for summary judgment or the suppression of evidence must be reviewed *de novo* by the district court).

## ANALYSIS

In his motion to suppress, Defendant concedes that the officers: (1) had reasonable suspicion of criminal activity in order to conduct the investigative detention based on his proximity to the location of the disturbance and his physical appearance which matched the reported suspect's description; (2) had reasonable suspicion that he may be armed and dangerous to justify frisking him for officer safety; *but* (3) did not have reasonable suspicion to search the closed plastic bag without a warrant. Defendant also argues that the exceptions to a warrantless search—community caretaking; search incident to an arrest; and the inevitable discovery rule do not apply in this instance; therefore, the gun that was found in the plastic bag should be suppressed. (ECF No. 22, 3-10.) [1] The Chief Magistrate Judge's report recommended that the motion to suppress be denied based on the inevitable discovery rule. (ECF No. 33.) This Court adopted the Chief Magistrate Judge's recommendation on May 14, 2024. (ECF No. 35.)

Based on the SCSO deputies' testimony during the evidentiary hearing, the body worn camera footage and the police car video evidence, the Chief Magistrate Judge provided the following proposed findings of facts:

Shelby County Sheriff's Deputies Keith Keppen, Richard Phillips, and Stanford McNeil responded to a domestic disturbance call on April 6, 2021, around 10:12 a.m. (ECF No. 33, 1–5; Tr. ECF No. 47, 7:23 & 8: 9–12.) The caller reported that a gun had been fired into the air. When the officers arrived, they found two cars stopped in the middle of the street, facing each other with both cars' front hoods raised. One of the men at the scene, the Defendant, had on clothing matching

---

[1] The Court notes that these positions and arguments were not specifically included in, or adopted by Defendant in the objections to the R&R. (see generally ECF No. 49.)

the description of the suspect who was reportedly involved in the disturbance and was holding a plastic grocery store bag that he immediately placed on top of the vehicle, a Chevrolet Equinox. (ECF No. 47, 12: 6–7, 23–25, 39:1–12.) Deputy Richard Phillips spoke with Defendant's nephew who indicated that the Defendant had been disturbing the neighbors, refused to allow his mother (Defendant's sister) to get her things, and had fired a shot into the air, prior to trying to leave the scene. (Tr. ECF No. 47, 13:24–25, 14:1–3; 52:14–21.) Officers approached and frisked Clayton; no weapons were found on his person. (*Id.* at 18:11–12.) Deputy Keppen then approached the car, looked through the open car door and windows. After finding a spent shell casing near the location directed by a witness, Deputy Phillips signaled for the officers to cuff, detain and arrest Clayton for reckless endangerment. (Tr. ECF No. 47, 50–51, 53:10–14 & 22–23.) The Defendant was placed in the back of Deputy McNeil's squad car. (*Id.* at 3–4, Tr. ECF No.47, 54, 80–81.) Shortly thereafter, Deputy Keppen retrieved the plastic bag from the roof of the vehicle and discovered a loaded gun in a towel inside the bag. The Chief Magistrate Judge noted that "[a]t this time, Deputy Keppen, who was aware of the discovered shell casing and Clayton being handcuffed, picked up the plastic bag from the roof of the Equinox. He testified that he "decided to check it since it was on [Clayton's] person when" the police first arrived.'" (Tr. ECF No. 47, 13–15; Ex. No. 1 at 3:31, 5:26.) After his arrest, Clayton's sister came out of the residence. While in the back of Deputy McNeil's patrol car, Deputy Dodson spoke with Clayton, giving him the opportunity to leave the car with his sister or have it towed. He decided to have it towed. The Chief Magistrate Judge ultimately concluded that the officers received valid consent to take possession of the car. (ECF No. 33, 4, 19–21.)

The R & R provided the following proposed conclusions of law: The officers had probable cause that the firearm was located either in the Equinox or the grocery bag. (*Id.* at 5.) Having

4

probable cause did not give the officers legal authority to search the grocery bag. A search warrant or some legally recognized exception to the warrant requirement was needed; and a search warrant was not obtained. (ECF No. 33, 7.) The firearm would have inevitably been discovered based on the inventory search exception to the warrant requirement. (*Id.* at 14.)

Defendant objects to the Chief Magistrate Judge's recommendation that the Court deny the motion to suppress based on the following reasons: (1) the deputies' failed to follow the SCSO tow policy, which would have shown the search was investigative rather than inventory; (2) the chronology of events did not support that law enforcement had the authority to tow the vehicle, a prelude to an inventory search; (3) Deputy Kellen illegally seized the bag and discovered the gun prior to Defendant agreeing to have the car towed. As such, Defendant contends that an illegal investigatory search, *not* an inventory search, occurred prior to Defendant's consent to have the vehicle towed, and that illegal search led to the unlawful warrantless discovery of the gun at issue. (ECF No. 49, 3.) The Government responds that the R & R is reflective of the facts in the record, and "[w]hile the Chief Magistrate Judge concluded that the seizure of the pistol was recovered following an unlawful search, he properly held that the pistol would have been discovered inevitably pursuant to an inventory search." (ECF No. 50, 2.) [2] The Government contends that other facts in this case existed that would have led to the discovery of the gun: (1) Clayton was placed under arrest for reckless endangerment by use of a firearm prior to the search and discovery of the firearm by Deputy Keppen; (2) Clayton's decision to tow, based on the proof in the record, was not predicated on the discovery of the firearm; and (3) Officer Phillips' admitted failure to document Clayton's property on the tow form, as required by the policy, does not render the inventory search invalid. Thus, the Government asserts that Defendant's objections should be

---

[2] *United States v. Kennedy*, 61 F.3d 494, 498 (6th Cir. 1995) (quoting *United States v. Eng*, 971 F.2d 854, 861 (2d Cir. 1992)) (internal quotations omitted).

5

overruled, the inevitable discovery doctrine applies, and the motion to suppress denied. [3] (ECF No. 50, 5.)

"An inventory search is a recognized exception to the Fourth Amendment's warrant requirement: where the police are in lawful custody of a vehicle, they may conduct an inventory search to catalogue its contents pursuant to standardized criteria." *United States v. Alexander,* 954 F.3d. 910, 915 (6th Cir. 2020), quoting *Florida v. Wells*, 495 U.S. 1, 4, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990); *see also Colorado v. Bertine*, 479 U.S. 367, 375-76, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). "The purpose is "to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *United States v. Smith*, 510 F.3d 641, 650-51 (6th Cir. 2007) (quoting *United States v. Lumpkin*, 159 F.3d 983, 987 (6th Cir. 1998)). An inventory search must not be undertaken "for purposes of investigation and must be conducted according to standard police procedures. However, the fact that an officer suspects that contraband may be found does not defeat an otherwise proper inventory search." *Lumpkin*, 159 F.3d at 987 (citation omitted).

The inevitable discovery exception to the exclusionary rule applies when the government can demonstrate either existence of independent, untainted investigation that inevitably would have uncovered the same evidence. *United States v. Kennedy*, 61 F.3d 494, 498 (6th Cir. 1995). The inevitable discovery exception applies when, at the time of the unlawful search, there was a separate independent line of investigation underway or there were compelling facts indicating that the disputed evidence would have inevitably been discovered, such as proof that the evidence would have been found in an inventory search that would inevitably follow seizure of a

---

[3] See *United States v. Hockenberry*, 730 F.3d 645, 660–61 (6th Cir. 2013) (failure to inventory all "valuable" items in vehicle did not invalidate inventory search)

car. *See United States v. Johnson,* 22 F.3d 674, 684 (6th Cir.1994) and *United States v. Buchanan,* 904 F.2d 349, 356–57 (6th Cir. 1990).

Defendant first objects to the recommendation that the motion to suppress be denied because SCSO failed to follow its tow in policy. (ECF No. 49, 2.) Defendant states that is uncontroverted that law enforcement did not follow the Shelby County Sheriff's Office tow policy to document property on the inventory form, which demonstrates the search was an investigative search instead of an inventory search under *United States v. Torbert*, 207 F.Supp.3d 808 (S.D. Ohio 2016). The Government responds that Officer Phillips' admitted failure to document Clayton's property on the tow form, as required by the policy, does not render the inventory search invalid pursuant to *United States v. Hockenberry*, 730 F.3d 645, 660–61 (6th Cir. 2013). The Court agrees.

The SCSO tow in policy provides:

> g. **Inventory of Vehicles**
>
> (1) Vehicles shall be inventoried whenever they are towed. The purposed of an inventory is to protect the officers and the Sheriff's Office from civil claims of larceny by the owner/operator and to safeguard the owner's property. …
> (2) An inventory shall include the area of the vehicle to which we have access...All property found is to be listed on the 195.15a Tow-In-Form as part of the inventory.

(ECF No. 32, Exhibit 3.) Deputy Richard Phillips testified during the suppression hearing that after someone is arrested and there is probable cause that a vehicle contains evidence, the tow in policy requires an inventory of the vehicle and that everything found in the vehicle should be listed on the tow form in order to protect the owner's property. (Tr. ECF No. 47, 61, 65.) He admitted that he did not document any items belonging to Clayton on the form. (ECF No. 47, 67: 15–25, 68:1–3). However, a failure to inventory all valuable items in a vehicle does not render the inventory search invalid. *Hockenberry,* 730 F.3d 660–61; *see also United States v. Kimes,* 246

F.3d 800, 805 (6th Cir. 2001)([t]he post-discovery listing of items discovered in a search, moreover, has no pertinent connection to the discovery itself.) Based upon the Record in this case, although unfortunate, the Officer's failure to follow the tow policy does not help the Defendant.

Defendant also objects that the Chief Magistrate Judge did not consider that the disposition of the vehicle was undetermined nor that the plastic bag was searched, and the gun discovered prior to Clayton's consent to the tow. Therefore, Defendant states there was no need for an inventory search or the inevitable discovery exception. (ECF No. 49, 3.) The Government responds that other facts in this case existed that would have inevitably led to the discovery of the gun negating the need for an inventory search. (ECF No. 50.) Again, the Court agrees.

The Chief Magistrate Judge clearly addressed the timing of the search, the colloquy between Officer Dodson and the Defendant regarding the status of the vehicle and his preference to tow the car or leave it with his sister. Ultimately, Clayton told the Officers to tow his vehicle. Clayton admits that although he initially "vacillates between leaving the car with his sister….and having it towed" he decided to "let it be towed." (ECF No. 49, 2–3.) During the evidentiary hearing, counsel for Defendant inquired about the circumstances surrounding the tow:

> Q. Do you know why the vehicle was towed?
> A. Well, it was sitting in the middle of the parking lot. We—well the detective did ask Mr. Clayton if
> Q. Objection.
> ….
> A. When he was first initially asked he did say yes. The detective asked did he want it towed, and he said no, he wanted it to go with his sister. And the detective asked him again and he paused for a while, and then he said, no, go ahead and tow it.

(ECF No. 47, 57–58.) (*see also,* ECF No. 47, 58:14–22.) [4]

---

[4] SCSO Stanford McNeil, another officer on the scene, also testified that SCSO Dodson questioned Defendant about whether he wanted his car towed or left with his sister while he was in the back seat of his squad car. (ECF No. 47, 84–85, 88.)

Therefore, the Court finds that the Chief Magistrate Judge fully considered the pertinent chronology of the events, including the status of the vehicle; correctly determined the gun would have been inevitably discovered during an inventory search; and properly concluded that the Defendant's consent to having the vehicle towed was valid and complied with SCSO tow in policies.

Given the facts, and consistent with the Chief Magistrate Judge's recommendation, the Court concludes the gun would have inevitably been discovered during an inventory search of the vehicle after the tow. (ECF No. 32, Exhibits 1, 2, 4 & 5 and Tr. ECF No. 47, 14:17–25, 15:4–20.)

After a *de no*vo review of the Record, the Court finds that the Chief Magistrate Judge's R & R should be Adopted**,** the Defendant's Objections Overruled and the Defendant's Motion to Suppress Evidence **DENIED**. (ECF Nos. 22, 49 & 50.) Defendant's Motion for Reconsideration, ECF No. 40, is terminated as Moot.

**IT IS SO ORDERED** on this 28th day of March 2025.

*s/John T. Fowlkes, Jr.*
JOHN T. FOWLKES, JR.
UNITED STATES DISTRICT JUDGE